# UNITED STATES BANKRUPTCY COURT

## FOR THE EASTERN DISTRICT OF WISCONSIN

IN RE:

    JENNIFER S. SIDDERS,                     Case No. 2016-20600-GMH

                                                  Chapter 13

                    Debtor.

---

WATERSTONE BANK SSB
f/k/a WAUWATOSA SAVINGS BANK,

                    Movant,

and

JENNIFER S. SIDDERS, Debtor, and
MARY B. GROSSMAN, Trustee,

                    Respondents.

---

## NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY AS TO WATERSTONE BANK SSB f/k/a WAUWATOSA SAVINGS BANK

        WaterStone Bank SSB f/k/a Wauwatosa Savings Bank has filed papers with the court to obtain relief from the automatic stay imposed by § 362(d) of the Bankruptcy Code.

        **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

        If you do not want the court to grant relief from the automatic stay, or if you want the court to consider your views on the motion, then **within 14 days of the date of this notice,** you or your attorney must:

-1-

File with the court a written objection and request for hearing at:

> Clerk of US Bankruptcy Court
> 126 U S Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, WI 53202

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

You must also mail a copy to:

> Mark C. Vap
> 11200 West Plank Court
> Suite 100
> Wauwatosa, WI 53226

> - AND -

> Mary B. Grossman
> Chapter 13 Trustee
> P.O. Box 510920
> Milwaukee, WI 53203

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

Date: _March 1, 2016_          Signature: _/s/ Mark C. Vap_

Name:       Mark C. Vap
Address:    11200 West Plank Court #100
            Wauwatosa, WI 53226

UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

IN RE:

JENNIFER S. SIDDERS,

Case No. 2016-20600-GMH

Chapter 13

Debtor.

WATERSTONE BANK SSB
f/k/a WAUWATOSA SAVINGS BANK,

Movant,

and

JENNIFER S. SIDDERS, Debtor,
and MARY B. GROSSMAN, Trustee,

Respondents.

## MOTION FOR RELIEF FROM AUTOMATIC STAY AS TO
## WATERSTONE BANK SSB f/k/a WAUWATOSA SAVINGS BANK

WaterStone Bank SSB f/k/a Wauwatosa Savings Bank, by its attorney, Mark C. Vap, moves the Court pursuant to § 362(d) of the Bankruptcy Code for an Order Terminating the Stay and asserts the following:

1.    The above Debtor Jennifer S. Sidders filed a Chapter 13 petition on January 27, 2016, and the Court has jurisdiction over her and the subject matter of this action pursuant to 28 U.S.C. § 1471.

2.    Mary B. Grossman has been appointed Trustee in this case.

1

3. Movant is the holder of a perfected security interest in real estate known as 20390 West Barton Road, New Berlin, Wisconsin. This property is the Debtor's homestead. Movant's perfected security interest arises by virtue of:

    a. A Mortgage Note executed on June 8, 2004, by Premier Investment Properties LLC (NFS Timothy P. Sidders as Member and Individual) and delivered to Movant, a copy of which is attached hereto as ***Exhibit A***.

    b. A Mortgage "A" executed by Premier Investment Properties LLC on the same day and delivered to Movant, a copy of which is attached hereto as ***Exhibit B***.

    c. A Modification Agreement "A" dated February 3, 2005, between Premier Investment Properties LLC and Movant, a copy of which is attached hereto as ***Exhibit C***.

    d. A Home Equity Credit Agreement executed on November 14, 2005, by NFS Timothy P. Sidders and Jennifer S. Sidders and delivered to Movant, a copy of which is attached hereto as ***Exhibit D***.

    e. A Mortgage "B" executed by NFS Timothy P. Sidders and Jennifer S. Sidders on the same day and delivered to Movant, a copy of which is attached hereto as ***Exhibit E***.

    f. A Loan Extension Agreement "A" dated January 21, 2008, between Premier Investment Properties LLC and Movant, a copy of which is attached hereto as ***Exhibit F***.

2

g. A Loan Extension Agreement "B" dated February 17, 2011, between Premier Investment Properties LLC and Movant, a copy of which is attached hereto as ***Exhibit G***.

h. A Modification Agreement "B" dated April 30, 2012, between NFS Timothy P. Sidders, Jennifer S. Sidders and Premier Investment Properties LLC and Movant, a copy of which is attached hereto as ***Exhibit H***.

i. An Order for Judgment and Judgment dated March 13, 2013, in favor of the Movant and against NFS Timothy P. Sidders, Jennifer S. Sidders and Premier Investment Properties LLC, a copy of which is attached hereto as ***Exhibit I***.

4. The legal description is as follows:
All that part of the Southeast One-quarter (1/4) of Section Thirty (30), in Township Six (6) North, Range Twenty (20) East, in the City of New Berlin, Waukesha County, Wisconsin, bounded and described as follows, to-wit: Commencing at the Southeast corner of said 1/4 Section; thence North along the East line of said 1/4 Section 647.16 feet to a point; thence West and parallel to the South line of said 1/4 Section 60 feet to a point; thence South and parallel to the East line of said 1/4 Section, 647.16 feet to a point; thence East along the South line of said 1/4 Section 60 feet to the place of beginning. Excepting therefrom those portions used for road purposes.

Also, all that part of the Southwest One-quarter (1/4) of Section Twenty-nine (29), in Township Six (6) North, Range Twenty (20) East, in the City of New Berlin, Waukesha County, Wisconsin, bounded and described as follows, to-wit: Commencing at the Southwest corner of said 1/4 Section; thence South 89°43' East along the South line of said 1/4 Section 341.20 feet to a point; thence North 645.21 feet to a point; thence North 89°43' West 341.20 feet to a point in the West line of said 1/4 Section; thence South 647.46 feet along the West line of said 1/4 Section to the place of beginning. Excepting therefrom those portions used for road purposes.

P.O. Address: 20390 West Barton Road, New Berlin, WI 53146

3

5.    Movant is owed $255,513.76, under the Mortgage Note and Mortgage "A" as of March 1, 2016; and $117,846.69, under the Home Equity Credit Agreement and Mortgage "B" as of March 1, 2016.

6.    The assessed value based upon the Waukesha County 2015 Property Tax Bill is $290,500.00.

7.    With respect to the Mortgage Note and Mortgage "A", Movant has not received a payment from the Debtor since January 4, 2016. Pre-petition the Debtor is ten (10) months in arrears and post-petition is currently one (1) month in arrears.

8.    With respect to the Home Equity Credit Agreement and Mortgage "B", Movant has not received a payment from the Debtor since December 22, 2015. Pre-petition the Debtor is twenty-five (25) months in arrears and post-petition is currently one (1) month in arrears.

9.    Movant acknowledges that, should the stay be terminated to allow Movant to continue with its state court foreclosure action including a sheriff's sale and confirmation hearing, Movant will not be entitled to obtain a personal judgment against the Debtor.

10.   Grounds for relief from the automatic stay under 11 U.S.C. § 362 exist as follows:

   a.    Movant has not been afforded adequate protection for its interests which are decreasing in value; and

   b.    Pre-petition the Debtor is ten (10) months in arrears and post-petition is currently one (1) month in arrears, with respect to the Mortgage Note and Mortgage "A"; and

4

c.　　Pre-petition the Debtor is twenty-five (25) months in arrears and post-petition is currently one (1) month in arrears, the Home Equity Credit Agreement and Mortgage "B".

Dated at Wauwatosa, Wisconsin on March 1, 2016.

/s/ *Mark C. Vap*

Mark C. Vap
State Bar No. 1046026
Attorney for Movant

P.O. ADDRESS:

11200 West Plank Court
Wauwatosa, WI 53226

Phone: (414) 459-4118
Fax: (414) 258-9016
markvap@wsbonline.com

5

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

JENNIFER S. SIDDERS,

Debtor.

Case No. 2016-20600-GMH

Chapter 13

## CERTIFICATE OF SERVICE

I, Denise L. Mihaljevic, paralegal to Attorney Mark C. Vap, the attorney for the WaterStone Bank SSB f/k/a Wauwatosa Savings Bank in the above captioned matter, hereby certify that the Notice of Motion, Motion for Relief from Automatic Stay, and affidavit in support by Todd M. Cruciani in the above captioned matter were served on March 1, 2016, via electronic service if accepted or first class United States Mail and addressed to the parties as shown below.

Dated this 1st day of March 2016, at Wauwatosa, Wisconsin.

/s/ *Denise L. Mihaljevic*

Denise L. Mihaljevic
Paralegal

Subscribed and sworn to before me
this 1st day of March 2016.

/s/ *Mark C. Vap*

Notary Public, State of Wisconsin
My Commission Is Permanent.

Miller & Miller Law, LLC – via electronic service
Ms. Mary B. Grossman – via electronic service
Office of the U.S. Trustee – via electronic service

Jennifer S. Sidders
20390 West Barton Road
New Berlin, WI 53146

Timothy P. Sidders (NFS)
20390 West Barton Road
New Berlin, WI 53146

# MORTGAGE NOTE
(Non-owner Occupied) Short Term Note

FOR VALUE RECEIVED, the undersigned makers, the Promisors and/or Mortgagors, hereinafter called BORROWER (whether one or more), promises and agrees as follows:

## 1.TERMS OF REPAYMENT AND ADDITIONAL ADVANCES

To pay to the order of WAUWATOSA SAVINGS BANK, Promisee and Mortgagee, a Corporation hereinafter called BANK, its successors and assigns, at its offices in Wauwatosa, Wisconsin, or such other place as may be designated by the holder of this Mortgage Note (hereinafter the "Note"), the principal sum of **Two Hundred Ninety Thousand Four Hundred and no/100** D ollars, (**$ 290,400.00** ), and such additional sums as may be subsequently advanced hereon to the Borrower by the Bank, together with interest thereon at the initial rate of **6.250** percent per annum, until the loan shall have been fully paid. Such principal and interest shall be due and payable in monthly installments of **$ 1,788.04** , on the first day of each and every month, commencing **July 1, 2004** .The entire balance shall be fully due and payable on **July 1, 2007** (the "Maturity Date"), unless Borrower fails to comply with all Borrower's obligations hereunder, in which event it shall become due prior thereto. It is intended that all provisions in this Note and the mortgage given as collateral security hereto (hereinafter the "Mortgage") comply with the provisions of Chapter 138 of the Wisconsin Statutes at the time of execution thereof, and to the extent not in compliance shall be superseded by the provisions of said statute. The principal sum, the interest thereon, and all other amounts payable by Borrower to Bank under this Note or under the Mortgage shall hereinafter be called the Note Debt.

## 2.INTEREST ON UNPAID BALANCE

Said interest shall be added to the total of the Note Debt as of the first day of each month at the annual rate of interest above provided, said interest calculation to be based upon the unpaid total of the Note Debt as of the close of business on the last day of each month.

## 3.PREPAYMENT PROVISION *see attc*

The principal amount of the loan evidenced by the Note (the "Principal") may be prepaid in part or in full at any time provided, however, that Borrower shall pay the Lender, as additional consideration for the loan evidenced by this Note:

a. An amount equal 3 percent of the original principal amount of the loan if the Principal is prepaid in full on or before first anniversary of the date of this Note;

b. An amount equal to 2 percent of the original principal amount of this Note if the Principal is prepaid in full at any time after the first anniversary of the date of this Note and on or before the fourth anniversary of the date of this Note; or

c. An amount equal to 1 percent of the original principal amount of this Note if the Principal is prepaid in full or in part at time after the fourth anniversary of the date of this Note and on or before the fifth anniversary of the date of this Note.

Borrower shall not be required to pay any additional consideration if the Principal is prepaid in part or in full after the fifth anniversary of the date of this Note. However, if the entire Note Debt becomes due prior to said five year period, a prepayment penalty shall not be assessed on account of a prepayment made within 30 days preceding the Maturity Date.

## 4.ESCROW REQUIREMENTS

Borrower shall pay to the Bank on the day monthly payments are due, until the Note Debt is paid in full, a sum equal to one-twelfth of the following escrow items: (a) yearly taxes and assessments on the property which is subject to the mortgage securing this Note (hereinafter the "Property"); (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums on the Property; and (d) yearly mortgage insurance premiums, if any. The Bank may require escrow payments in an amount estimated on the basis of current data and reasonably estimated future escrow requirements. Escrow funds shall be held by the Bank and the Bank shall apply them to pay the escrow items. Escrow funds held by the Bank for yearly taxes and assessments on the Property shall be applied by the Bank for payment of such taxes and assessments in a single lump sum. If the escrow funds held by the Bank exceed the amount required to pay the escrow items when due, the excess may, at the Bank's option, be credited to Borrower on future escrow obligations. If the amount of the escrow held by the Bank is not sufficient to pay the escrow items when due, Borrower shall pay to Bank any amount necessary to make up the deficiency in one or more payments as required by the Bank. The Bank shall not pay interest on escrow funds unless required by law. Upon payment in full of all sums owed pursuant to this Note and the Mortgage the Bank shall refund to Borrower any escrow funds held by the Bank. The Bank may waive Borrower's obligations under this paragraph 4, provided that the Bank may revoke such waiver if the Bank determines that its security is diminished by failure of the borrower to comply with this paragraph.

Blumberg No. 5119

EXHIBIT A

## 5.LATE CHARGE

The Bank shall charge and Borrower shall pay a "late charge" not to exceed 5% of each monthly payment (including escrow payments) more than fifteen (15) days in arrears, to cover the extra expense involved in handling delinquent payments. If not paid, this late charge shall be added to the Note Debt.

## 6. OTHER CHARGES

If borrower is a participant in the Bank's Auto-Payback Program ("Program") and Borrower terminates or fails to make payment of monthly payments to the Bank pursuant to the Program, the Bank shall charge and Borrower shall pay a processing fee not to exceed $200.00. If not paid, this fee shall be added to the Note Debt.

## 7.APPLICATION OF PAYMENTS

Unless applicable law provides otherwise, all payments received by the Bank under paragraphs 1 and 4 shall be applied: first, to late charges due; second, to processing fees due; third, to prepayment charges due; fourth, to interest due; fifth, to principal due; and last, to amounts payable under paragraph 4.

## 8.TO REPAIR, MAINTAIN AND INSURE PREMISES, AND PAY TAXES

Borrower agrees to keep the building and other structures on the Property in good repair, free from liens and free from waste, refuse, pollutants, contaminants, or hazardous or toxic materials and to comply with local, state, and federal laws relating to condition of the Property and regulating waste, refuse, pollutants, contaminants, petroleum products, or hazardous or toxic materials; to pay all taxes, special and other assessments levied or assessed by virtue of any law and assessment now or hereafter in force upon or against said Property or against the Bank, upon this Note, the Note Debt, the Mortgage, or upon the Bank's interest in the Property arising by reason of the Mortgage; to pay all bills for repairs and any and all expenses incident to the ownership of the Property when due and payable, in order that no lien superior to that of the Bank may be created against the Property during the term of the Mortgage; to permit the Bank to inspect, test and monitor the Property at reasonable times and upon reasonable notice; and to exhibit upon demand, at the office of the Bank, all receipts for said taxes and assessments, and all bills; to keep buildings and improvements now existing or hereafter to be erected or placed on the Property constantly insured up to their full insurable value, in companies acceptable to the Bank, by policies of insurance providing fire loss coverage, extended coverage, and such other coverage as may be required by the Bank, including flood loss coverage; to deliver to the Bank the policies of insurance and their renewals when due in such form as the Bank may elect, which policies shall have attached thereto loss payable clauses in favor of and in form acceptable to the Bank. Each insurance company concerned is hereby authorized and directed to make payment for loss directly to the Bank; the insurance proceeds, or any part thereof, may be applied by the Bank at its option either to the reduction of the Note Debt or to the restoration or repair of the Property. In case of failure of the Borrower to satisfy Borrower's obligations under this paragraph 7, the Bank may take reasonable steps to preserve the value of the Property, may pay any tax or assessment, make and pay for repairs, procure the insurance, discharge any claim, lien or encumbrance, or purchase any tax certificate or title or claim against the Property, and all sums so paid shall be added to the principal portion of the Note Debt as of the first day of the then current month, and become a part of the Note Debt, with interest thereon at a rate of 1-1/2% per annum in excess of the contract rate. The Borrower shall repay upon demand any monies paid or disbursed by the Bank for any of said purposes, and the Bank shall have no duty to inquire as to the validity of any tax, assessment, tax title or other claim against the Property but the receipt of the proper officer, tax or assessment purchaser or release of claim shall be conclusive of the validity and the amount thereof.

## 9.CONSENT REQUIRED TO TRANSFER

It is expressly understood and agreed that the Note Debt shall become due and payable forthwith, at the option of the Bank, if at any time during the term of this Note the Borrower shall sell, convey, transfer, or in any manner encumber the Property, or lease or rent for a period in excess of one year, or if either legal or equitable title shall vest in any person other than the Borrower in any manner and for any reason whatsoever, unless the consent in writing of the Bank, its successors or assigns, is first obtained. In the event of the approval by the Bank of any such transfer of title, the Bank shall make a service charge of 2% of the original principal balance due under this agreement which if not paid will be added to the principal portion of the Note Debt.

## 10.CHANGE OF OWNERSHIP NOT TO RELEASE MORTGAGORS

In the event the ownership of the Property or any part thereof becomes vested in a person other than the Borrower, the Bank may, without notice to the Borrower, deal with such successor or successors in interest with reference to the Mortgage and the Note Debt in the same manner as with the Borrower, and may forbear to sue or may extend time for payment of the Note Debt without discharging or in any way affecting the liability of the Borrower for the Note Debt.

## 11.OPTIONS OF BANK IN CASE OF DEFAULT

The happening of any one or more of the following events or conditions shall be a default hereunder, and upon the happening of any one or more of such events, or in case of default in any of the terms, conditions, or agreements of this Note or the Mortgage, the Bank may, at its option and without any notice or demand whatsoever, declare the entire Note Debt due and payable, and apply toward the payment of said Note Debt any indebtedness of the Bank to the Borrower, and thereafter proceed by action at law or to foreclose the Mortgage or both: (a) upon default by the Borrower in any payment

Case 16-20600-gmh    Doc 13    Filed 03/01/16    Page 10 of 30

Note or the Mortgage; (b) upon the making of a contract or agreement by the Borrower or suffering anything to be done whereby anyone may acquire the right to place a lien, mortgage, or other encumbrance against the Property; (c) in case of the actual or threatened alteration, addition to, demolition, or removal of any building on the Property without the prior written consent of the Bank; (d) in case of any act done or suffered to be done by the Borrower, whereby the security effected or intended to be effected by this Note and the Mortgage is weakened, diminished or impaired; (e) upon the default by said Borrower in the performance of any one or more of the covenants and agreements contained in this Note or the Mortgage; (f) if Borrower becomes insolvent or if a suit, action or proceeding shall be instituted by or against the Borrower to adjudicate Borrower as a bankrupt or insolvent, or seeking composition, reorganization, arrangement, readjustment, liquidation, dissolution or similar relief under the Bankruptcy Code or other present or future statute, law, rule or regulation; (g) if a suit, action or proceeding shall be instituted by virtue of a subordinate lien or claim against the Property; or if any order, judgment or decree is entered against Borrower by a court of any jurisdiction in any way whatsoever arising out of this Note or the Mortgage; or (h) in case of discovery by the Bank of a material misrepresentation in the application. The Borrower hereby assigns to the Bank as additional cash collateral security all rents and profits derived from the Property and all escrow funds paid to the Bank pursuant to this Note. The Borrower does hereby appoint said Bank agent for the management of the Property; and the Bank shall at any time and without notice have the right to enter upon, take possession of, and manage the Property, including the right to hire and pay a property manager and to collect the rents of the Property, including those past due, directly from the occupants or past occupants of the Property, and bring or defend any action in connection with said premises, which appointment and rights the Bank may elect and exercise to accept in the event the Bank, in its sole discretion, determines there has been a default or breach of covenant by the Borrower. The failure on the part of the Bank to exercise any of its rights hereunder shall not be construed to prejudice its other rights or its right upon any other or subsequent default or breach of covenant. It shall not affect the liability of any maker included within the term Borrower if the Bank, with or without notice, accepts partial payments; releases, impairs or fails to realize upon collateral for the Note Debt; releases, agrees not to sue, or compromises a claim against any such maker; or renews or extends the term of this Note.

## 12.COSTS AND ATTORNEY'S FEES: INDEMNIFICATION

It is understood and agreed that said Borrower shall pay all costs and reasonable attorneys' fees as incurred or paid by the Bank in any suit, action or proceeding in which it may be a party, whether as a plaintiff or defendant or otherwise, by reason of being a party to this Note or the Mortgage, or incurred or paid by the Bank by reason of any dispute, issue, or claim arising out of this Note or the Mortgage, or the interest of the Bank in the Property. The Bank may, at its option, add said costs and fees to the principal portion of the Note Debt in the event of non-payment by the Borrower. Borrower shall indemnify the Bank and hold the Bank harmless from all loss, costs, expenses, claims, and liabilities, including litigation expenses and attorneys' fees, arising from hazardous or toxic materials on, in or about the Property or arising in any way from Borrower's use of the Property.

## 13.FORECLOSURE

Upon the filing of any complaint, or the filing of any action to foreclose the Mortgage in any court having jurisdiction, such court may, at any time and without notice to the Borrower or any party claiming under said Borrower, and without regard to the then value of the Property or whether the same shall then be occupied by the owner of the equity of redemption as a homestead, appoint a receiver to serve without bond, to take possession of the Property, with the authority and power to rent and lease the Property; to maintain the Property, to collect all rents and profits; and to pay expenses incurred for maintenance, utilities, and taxes during the pendency of such action until redemption or confirmation of sale. Monies received by said receiver shall be applied, in the discretion of the receiver, toward expenses incurred in administration, expenses incurred in management, costs of renting, maintenance, utilities and taxes, reasonable attorneys' fees, and the amount due the Bank. Upon foreclosure and sale of the Property, proceeds shall be applied as follows: (a) first, to expenses of advertising, selling and conveying the Property; to all moneys advanced for insurance, taxes and other liens or assessments and sums which have been expended in and about the preservation of the Property, and to all disbursements incurred by the Bank including but not limited to court costs, sheriff's and service fees, and costs of title expense, together with reasonable attorneys' fees; (b) second, to the principal portion of the Note Debt and the interest due up to the time of confirmation of such sale or payment, (c) third, the excess, if any, according to further order of the court. It shall not be the duty of the purchaser to see to the application of the purchase money. In case of payment of the Note Debt prior to the confirmation of sheriff's sale but after the filing of any complaint or any action to foreclose the Mortgage all costs and disbursements incurred, including but not limited to title costs, court costs, disbursements and expenses of such proceeding, and reasonable attorneys' fees shall be added to the Note Debt.

## 14.FORECLOSURE ELECTION

Notwithstanding anything to the contrary herein, the Borrower agrees that in the event of foreclosure, the Bank may, at such time, waive judgment for any deficiency and proceed pursuant to the provisions of Section 846.103(2) of the Wisconsin Statutes, as they may apply to the Property.

## 15.WARRANTIES AND REPRESENTATIONS

Borrower and the person signing on behalf of Borrower warrant that Borrower and the person signing on behalf of Borrower have authority and capacity to enter into this Note and the Mortgage; good right to sell, mortgage, or convey the Property; that the Property is free and clear from encumbrances, and Borrower warrants the title thereto against all persons whomsoever. Each person signing below on behalf of another warrants and represents that he or she has authority to act on the other's behalf, that his or her signature is sufficient to bind the other, and that he or she has disclosed to Bank the terms and extent of his or her authority. Borrower warrants and covenants that, to the best of Borrower's knowledge, there are no waste, refuse, pollutants, contaminants, toxic or hazardous materials on, in or about the property; and that, to the best of Borrower's knowledge, the Property and its past, existing, and future uses have not, do not, and will not violate any local,

Case 16-20600-gmh    Doc 13    Filed 03/01/16    Page 11 of 30

state or federal laws regulating environmental matters or petroleum products, waste, refuse, pollutants, hazardous materials, or toxic materials. The Bank may require Borrower to provide a rent roll, financial disclosures and financial statements at reasonable times and on reasonable notice. All such statements and disclosures shall be true and correct. Each maker included within the term Borrower has made an independent determination of the financial condition of all other makers, and the Bank has made no representations about the financial condition of any maker or about the collectability or enforceability of this Note.

## 16.WAIVER

The Borrower waives notice of and consents to any and all extensions of this Note or any part thereof, without notice, and waives demand, presentment for payment, notice of non-payment and protest.

## 17.SINGULAR INCLUDES PLURAL

If more than one promisor has executed this Note the term of "Borrower" and the use of the singular number herein shall be read and construed accordingly, and, if only one promisor has executed this Note, the use of the plural number herein shall be read and construed accordingly.

## 18.NOTE AND MORTGAGE ONE CONTRACT

This Note is secured by the Mortgage to the Bank bearing even date herewith, and all of the terms and conditions of the Mortgage are hereby incorporated herein and made a part of this Note. If any clause or term herein is declared unconstitutional or in violation of Wisconsin Statutes or other applicable law, it shall not affect the validity of the remaining provisions of this Note.

Witness our hands and seals this day    **June 8, 2004**    .

**Premier Investment Properties LLC**    (SEAL)
Corporate Name of Borrower

By:_____(Seal)
**Timothy P Sidders, as Member**

Attest:_____(Seal)
**Timothy P Sidders, as INDIVIDUAL**

Case 16-20600-gmh    Doc 13    Filed 03/01/16    Page 12 of 30

# MORGTAGE

000245 JUN 22 '…

3177215

REGISTER'S OFFICE
WAUKESHA COUNTY, WI
RECORDED ON

06-22-2004  9:02 AM

MICHAEL J. HASSLINGER
REGISTER OF DEEDS

REC. FEE:       6.00
REC. FEE-CO:    5.00
REC. FEE-ST:    2.00
TRAN. FEE:
TRAN. FEE-STATE:
PAGES:          2

RETURN TO MORTGAGEE AT:

**WAUWATOSA SAVINGS BANK**
**11200 W PLANK COURT**
**WAUWATOSA, WI 53226**

PARCEL ID NUMBER

**NBC-1267-996**

The undersigned Mortgagor(s):          Loan Number:

**Premier Investment Properties LLC**

hereby mortgage(s) to WAUWATOSA SAVINGS BANK, a Wisconsin Corporation, Mortgagee, real estate in Waukesha County, Wisconsin described as follows (hereinafter the "Property"): ALL THAT PART OF THE SOUTHEAST 1/4 OF SECTION 30, IN TOWNSHIP 6 NORTH, RANGE 20 EAST, IN THE CITY OF NEW BERLIN, WAUKESHA COUNTY, WISCONSIN, BOUNDED AND DESCRIBED AS FOLLOWS, TO-WIT: COMMENCING AT THE SOUTHEAST CORNER OF SAID 1/4 SECTION; THENCE NORTH ALONG THE EAST LINE OF SAID 1/4 SECTION 647.16 FEET TO A POINT; THENCE WEST AND PARALLEL TO THE SOUTH LINE OF SAID 1/4 SECTION 60 FEET TO A POINT; THENCE SOUTH AND PARALLEL TO THE EAST LINE OF SAID 1/4 SECTION, 647.16 FEET TO A POINT; THENCE EAST ALONG THE SOUTH LINE OF SAID 1/4 SECTION 60 FEET TO THE PLACE OF BEGINNING. EXCEPTING THEREFROM THOSE PORTIONS USED FOR ROAD PURPOSES. ALSO, ALL THAT PART OF THE SOUTHWEST 1/4 OF SECTION 29, IN TOWNSHIP 6 NORTH, RANGE 20 EAST, IN THE CITY OF NEW BERLIN, WAUKESHA COUNTY, WISCONSIN, BOUNDED AND DESCRIBED AS FOLLOWS, TO WIT: COMMENCING AT THE SOUTHWEST CORNER OF SAID 1/4 SECTION; THENCE SOUTH 89- 43' EAST ALONG THE SOUTH LINE OF SAID 1/4 SECTION 341.20 FEET TO A POINT; THENCE NORTH 645.21 FEET TO A POINT; THENCE NORTH 89  43' WEST 341.20 FEET TO A POINT IN THE WEST LINE OF SAID 1/4 SECTION; THENCE SOUTH 647.46 FEET ALONG THE WEST LINE OF SAID 1/4 SECTION TO THE PLACE OF BEGINNING. EXCEPTING THEREFROM THOSE PORTIONS USED FOR ROAD PURPOSES. ADDRESS: 20390 W BARTON RD, NEW BERLIN, WI. ***THIS MORTGAGE COVERS NON-HOMESTEAD PROPERTY.***

including all apparatus, equipment, fixtures or articles, whether in single units or centrally controlled, used to supply heat, gas, air conditioning, water, light, power, refrigeration, ventilation, or otherwise, and any other thing now or hereafter therein or thereon, including screens, window shades, storm doors and windows, floor coverings, screen doors, awnings, built-in stoves, and water heaters (all of which are fixtures and a part of said real estate whether physically attached thereto or not), together with the privileges, hereditaments, appurtenances and improvements now or hereafter belonging to or erected thereon, hereby releasing and waiving all rights under any homestead exemption laws and all right to retain possession of said premises after any default in payment or breach of any of the covenants or agreements herein.

This mortgage is given to secure an indebtedness to the Mortgagee under a mortgage note in the amount of **Two Hundred Ninety Thousand Four Hundred and no/100** Dollars ($ **290,400.00** ) of even date, executed by the Mortgagors, which note is made a part hereof (hereinafter the "Note") and such additional sums subsequently advanced in accordance with and pursuant to the Note and all other indebtedness of Mortgagors to Mortgagee agreed by Mortgagors to be secured hereby. It is the intent hereof to secure payment of the Note whether the entire amount has been advanced to Mortgagors at the date hereof or is advanced at a later date, or having been advanced, has been repaid in part and further advances made at a later date. Nothing herein contained shall be considered as limiting the amount that shall be secured hereby when advanced to protect the Property, or in accordance with covenants contained in this mortgage and the Note.

The Mortgagors hereby assign to the Mortgagee as additional cash collateral security all rents and profits derived from the property and all escrow funds paid to Mortgagee pursuant to the Note. The Mortgagors hereby appoint said Mortgagee agent for the management of the Property, and the Mortgagee shall at any time and without notice have the right to enter upon, take possession of and manage the Property, including the right to hire and pay a property manager, and to collect the rents of the property, including those past due, directly from the occupants and past occupants of the Property, and bring or defend any actions in connection with the property, which appointment and rights the Mortgagee may elect to accept and exercise in the event the Mortgagee, in its sole discretion, determines there has been a default or breach of covenant by the Mortgagors. The Mortgagee may elect from time to time not to enforce some or all of the provisions of this paragraph. The

Rev 05/04

Page 1 of 2



Mortgagee may provide a copy hereof to the occupants and past occupants of the Property, and such copy shall be sufficient notice and evidence of the Mortgagee's right to collect rents directly from said occupants. Mortgagee consents to the appointment of a receiver by a court, without notice and without bond, to take possession of the Property, with authority and power to rent and lease the Property; to manage and maintain the Property, including hiring a property manager; to collect all rents and profits; to terminate tenancies and evict occupants, or tenants in default; and to pay expenses incurred for maintenance, utilities, and taxes, and insurance; and with such other power and authority as granted by the Note and the court.

The Mortgagors agree that in the event of foreclosure, the Mortgagee may, at such time, waive judgment for any deficiency and proceed pursuant to the provisions of Sections 846.101 and 846.103(2) of the Wisconsin Statutes, as they may apply to the property.

In the event that the Property or any part thereof is sold, conveyed, transferred, encumbered, or leased for a term of more than one year, or in the event that either legal or equitable title vests in any persons other than the Mortgagor for any reason, the entire indebtedness pursuant to this mortgage and the Note shall become due and payable forthwith, at the option of the Mortgagee, without further notice.

If one person executes this mortgage, the term "Mortgagors" and the use of the plural number herein shall be read and construed accordingly.

IN WITNESS WHEREOF, the said Mortgagor(s) have executed and sealed this Instrument at
**Wauwatosa, WI** on **June 8, 2004**


**Premier Investment Properties LLC** _____ **(SEAL)**
**Corporate Name of Borrower**

_____ **(Seal)**
**Timothy P Sidders, Member**


STATE OF WISCONSIN
**Milwaukee** County

Personally came before me on **June 8, 2004**, the above named:
**Timothy P Sidders**

**Premier Investment Properties LLC**

to me known to be the person(s) who executed the foregoing instrument and acknowledged the same.

This instrument was drafted by:

_____
**Alan P Clementi**

W.F. Bruss for
Wauwatosa Savings Bank

(Seal) Notary Public, **Milwaukee** State of Wisconsin
My Commission Expires: **April 8, 2007**

**Rev 05/04**

Loan #

## MODIFICATION AGREEMENT

THIS AGREEMENT, made this 3rd day of February, 2005, between Premier Investment Properties LLC, hereinafter called mortgagors, and WAUWATOSA SAVINGS BANK, hereinafter called mortgagee.

WITNESSETH, in consideration of the mutual promises of the parties hereto, the mortgagee agrees to reduce the interest rate from 6.250% to 5.50%, for a fee in the amount of $400.00. The mortgagee further agrees to fix this rate for 3 years. Effective March 1, 2005, the monthly payment will be as follows:

| | |
|---|---|
| Principal & Interest: | $1,652.87 |
| Escrow: | $414.07 |
| Total Payment: | $2,066.94 |

The modification fee is due and payable upon submission of this agreement to the mortgagee. Unless the full Modification Fee is submitted to the mortgagee with this agreement, the mortgagor consents to have the unpaid portion of the Modification Fee added to the principal balance of the below referenced note. The mortgagor understands and acknowledges that any addition to the principal balance of the below referenced note may require to the mortgagor to pay a greater amount of interest over the term of the note and may alter the amortization of the note.

On a certain note dated the 8th day of June, 2004, given by the mortgagors to the mortgagee, and which note is secured by a mortgage given by the mortgagors to the mortgagee, dated the 8th day of June, 2004, and recorded in the Office of the Register of Deeds for Waukesha County, Wisconsin, on the 22nd day of June, 2004, in Reel N/A of Mortgages, Image N/A, as Document No. 3177215.

IT IS FURTHER MUTUALLY AGREED, that the terms and conditions of the said note and mortgage shall in all respects, except herein modified, stand and remain as like effect as to defaults in payment of interest and other defaults, as in said note and mortgage provided. If more than one mortgagor has executed this Agreement, all mortgagors agree to the modification terms and conditions as set forth above and as stated in the mortgage note and mortgage.

The monthly payment is subject to increases or decreases in real estate taxes and insurance premiums.

**Premier Investment Properties LLC**
Corporate Name of Borrower

Timothy P Sidders         Member

In the presence of :

Elizabeth Gerbing

WAUWATOSA SAVINGS BANK

By: _____
Donald J. Stephens         President

Barbara J. Coutley         Secretary

STATE OF WISCONSIN )
                     )
COUNTY OF MILWAUKEE)

Personally came before me this **0 4** day of **MARCH** ,**2005** , the above named, Donald J. Stephens, President, and Barbara J. Coutley, Secretary, of the above named Corporation, and to me known to be such President and Secretary of the above named Corporation, and acknowledge that they executed the foregoing instrument as such officers as the deed of said Corporation, by its authority.

My commission expires:    May 18, 2008

Teressa J. Rowley
Notary Public, State of Wisconsin

APPROVED AT BOARD OF
DIRECTORS MEETING

MAR    2005

EXHIBIT C

## HOME EQUITY CREDIT AGREEMENT                    LOAN NUMBER

I and Wauwatosa Savings Bank ("Lender") agree as follows:

**1. Loans.** I request that Lender lend to me from time to time such amounts as I may request in accordance with this Agreement ("Loans"), and, subject to the terms of this Agreement, Lender agrees to lend such amounts up to the aggregate principal amount of **ONE HUNDRED FIVE THOUSAND SIX HUNDRED AND NO/100THS** Dollars (**$105,600.00**), at any time outstanding (the "Credit Limit"). I may obtain Loans under this Agreement until **NOVEMBER 15, 2015** or the date on which I or Lender terminate pursuant to paragraph 12 (the "Termination Date"). Lender is not obligated to make Loans in excess of the Credit Limit. Notwithstanding the Credit Limit, I am liable for and agree to pay to Lender all Loans and other charges made under this Agreement.

**2. Finance Charges.** Lender will post all Loans and other charges to an account maintained in my name (the "Account"). All charges to the Account will be considered Loans for the purposes of this Agreement. All Loans and other charges made under this Agreement are subject to Finance Charges from the date posted to the Account by Lender until paid. Unpaid Finance Charges posted to the Account will not be subject to Finance Charges from the date posted until paid. I agree to pay the Finance Charges, calculated as follows: Lender figures the FINANCE CHARGES by applying the monthly periodic rate described in paragraph 4 to the average daily balance in the Account (including current transactions). To get the "average daily balance," Lender takes the beginning balance of the Account each day, adds any new Loans or charges, and subtracts any payments or credits. This gives Lender the daily balance. Then, Lender adds up all of the daily balances for the billing period and divides the total by the number of days in the billing period. This gives Lender the "average daily balance."

**3. Other Charges.**
   a. **Late Charge.** If any payment is not paid in full on or before the 15th day after its due date, I agree to pay a late charge of 5% of the unpaid amount.
   b. **Returned Payment Fee.** I agree to pay a fee of $20.00 for each check presented for payment to Lender which is returned unsatisfied or unpaid for any reason or for any authorized automatic ("ACH") transfer made as payment to Lender which is returned unsatisfied, refused, or is unpaid for any reason.
   c. **Over-The-Credit-Limit-Fee.** I agree to pay a fee of $50.00 each time Lender, at its sole discretion, makes any Loan which (when added to my unpaid Loan balance) exceeds the Credit Limit.
   c. **Less Than Minimum Check Fee.** I agree to a fee of $25.00 for each Check, as defined below, presented to Lender in an amount less than $250.00.
   d. **Appraisal Fee.** I agree to pay a fee of $0.00 for the appraisal of the property described in paragraph 7, below.
   e. **Fees to Third Parties.** I agree to pay the following fees: $15.50-Credit Report, $50.00-Title Insurance, $4.00-Flood Certification, and $13.00-Recording Fee.

If these charges or any Finance Charges are not required by Lender to be paid in cash, they may be charged to the Account by Lender.
If property and/or liability insurance is required under any security agreement or mortgage, I may choose the person through whom such insurance is obtained subject to Lender's approval.

**4. Annual Percentage Rate.** The Annual Percentage Rate includes only interest and no other charges.
   a. FINANCE CHARGES are computed by applying a monthly periodic rate of .7083% to the "average daily balance" (corresponding ANNUAL PERCENTAGE RATE of (8.50%).
   b. The periodic rate and corresponding Annual Percentage Rate may vary during the term of this Agreement. The periodic rate and the corresponding Annual Percentage Rate shall be adjusted on DECEMBER 1, 2005 and on the same day of each and every month thereafter (the "Rate Change Date"). The Annual Percentage Rate on the date of this Agreement and on each subsequent Rate Change Date shall equal the highest U.S. prime rate published in The Wall Street Journal "Money Rates" table on the last business day immediately preceding each Rate Change Date (the "Index Rate"), Plus 1.75 percentage points. The current value of the Index Rate is 6.75%. The current monthly periodic rate is .7083% (corresponding ANNUAL PERCENTAGE RATE is 8.50%). The monthly periodic rate is 1/12th of the Annual Percentage Rate. Beginning on the date an adjustment in this rate is effective until the next Rate Change Date, the periodic rate then in effect will be applied to the balance of the Account to determine the Finance Charges. An adjustment in the periodic rate and corresponding Annual Percentage Rate will apply both to outstanding balance of the Account and to new Loans and other charges. An increase in the Index Rate may increase the amount of each payment or the final payment. If the Index Rate ceases to be made available to Lender, Lender may substitute a substantially similar index and margin. The Annual Percentage Rate shall not exceed the lesser of any applicable maximum rate permitted by law or 18.00%. Quoted interest rates are based on customers with automatic debit from a transactional account. Credit Agreements without automatic debit accounts will bear interest at the quoted rates plus 50 basis points.

**5. Loan Procedures.** I may obtain Loans under this Agreement by using drafts, checks or other means approved by Lender ("Checks") for the purpose of obtaining Loans under this Agreement. I agree that each Check will be for $250.00 or more. I authorize Lender to pay and thereby create a Loan to me in the amount of each Check that is presented to Lender and signed by me or any other person authorized by me, regardless of the date or amount of the Check. I further authorize Lender, when I order Lender to stop payment on any Check, to create a Loan to me in that amount of Lender's customary stop payment charge. Oral stop payment orders must be confirmed in writing acceptable to Lender within 14 days of receipt by Lender of the oral order. Lender may dishonor Checks drawn by me that are less than the required minimum amount of $250.00 or that cause the balance of the Account to exceed the Credit Limit.

**6. Payment.** The total unpaid balance or, at my option, the Minimum Payment is due and payable on DECEMBER 15, 2005, and on the same day of each and every month thereafter. The Minimum Payment is the total amount of unpaid Finance Charges, but the Minimum Payment shall not be less than $50.00 unless a lesser amount paid will reduce the balance of the Account to zero. In addition, I must pay any amount by which the balance of the Account exceeds the Credit Limit, any prior unpaid Minimum Payments and any additional charges. The total unpaid balance shall be due and payable in full on the Termination Date. (I agree to maintain the deposit account identified below and authorize Lender to automatically debit my account) or (I agree and authorize Lender to automatically charge my account with another financial institution (under the terms of separate written (ACH) transfer authorization)) for the Minimum Payment and other charges due under this Agreement.

**7. Security Interest.** This Agreement is secured by a real estate mortgage or security agreement (the "Mortgage") to Lender of even date herewith, on property located at 20390 W BARTON RD NEW BERLIN WI 53151-3917, and as more particularly described in the Mortgage (the "Real Estate").

This Agreement includes the Additional Provisions on pages 2 and 3 hereof. I agree to the terms and conditions set forth above and on pages 2 and 3, and as they may be amended from time to time. I acknowledge receipt of the Early Disclosure of Important Terms and the accompanying brochure about home equity lines of credit and of a completed copy of this Agreement. See important disclosures on pages 2 and 3.

For Wisconsin married residents only. If signed below, my obligations to Lender evidenced by this Agreement are being incurred in the interest of my marriage or family. X

CUSTOMER SIGNATURES

Dated **NOVEMBER 14, 2005.**

_____

Deposit Account Number

20390 W BARTON RD NEW BERLIN WI 53151-3917          X _____ (SEAL)

(Customer Address)                                   TIMOTHY P SIDDERS  CUSTOMER SIGNATURE

20390 W BARTON RD NEW BERLIN WI 53151-3917          X _____ (SEAL)

(Customer Address)                                   JENNIFER S SIDDERS  CUSTOMER SIGNATURE

This Agreement accepted by Lender as of the above date. By: _____
                                                            ANGELINE A FRINDELL    HOME EQUITY LOAN OFFICER

Credit Agreement

HOME EQUITY CREDIT AGREEMENT, PAGE 1 OF 3

EXHIBIT
D

Bloomberg No. 6119

8. **Additional Loan Procedures.** Lender's obligation to make Loans to me shall first arise at the time Lender signs this Agreement and delivers a signed copy to me; provided that, before the date of the first Loan, Lender shall have received unless waived by Lender (a) such appraisals, subordination agreements, certificates or other written evidence of insurance, and other documents satisfactory to Lender, (b) a mortgage on the Real Estate securing this Agreement signed by all of the owners of the Real Estate, (c) at Lender's option either a commitment for a policy of title insurance in the amount of the Credit Limit or a title report, in each case showing the status of title to the Real Estate and with a revolving credit endorsement satisfactory to Lender, (d) payment in cash of the Other Charges described in paragraph 3, if required by Lender, (e) a credit report satisfactory to Lender, and (f) evidence satisfactory to Lender that I have not exercised my right to rescind this transaction.

9. **Additional Security Provisions.** Lender disclaims and will not enforce the Mortgage as security for any Loan, or portion thereof, that exceeds the Credit Limit or as security for this Agreement if this Agreement is governed by the Wisconsin Consumer Act and at the time this Agreement is declared due and payable because of the occurrence of an event of default the full unpaid obligation (including unpaid Finance Charges) is less than $1,000.00. Unless a lien would be prohibited by law or would render a nontaxable account taxable, I grant Lender a security interest and lien in any deposit account I may at any time have with Lender to secure payment of this Agreement. This Agreement is also secured by collateral securing other loans I may have with Lender to the extent not prohibited by the Wisconsin Consumer Act. Lender may, at any time after the occurrence of an event of default and after notice and opportunity to cure, if such notice and opportunity is required by Section 425.105, Wis. Stats., set-off any amount unpaid under this Agreement against any deposit balances I may at any time have with Lender or other money now or hereafter owed to me by Lender.

10. **Additional Payment Provisions.** I understand that I will be furnished a statement by Lender each billing period at the end of which there is an undisputed debit or credit balance of $1.00 or more in my Account unless Lender deems this Agreement uncollectible, delinquency proceedings have been instituted or furnishing the statement would violate federal law. The Minimum Payment will not fully repay the principal that is outstanding under this Agreement. I will be required to pay the entire balance in a single final payment on the Termination Date. I may prepay the unpaid balance in whole or in part at any time without penalty. All payments will be applied first to payment of Finance Charges and additional charges, if any, in such order as Lender determines, and then to Loans. A partial prepayment shall not postpone the due date of any subsequent Minimum Payment. Payments must be made to Lender at its offices at 7500 West State Street, Wauwatosa, Wisconsin, 53213, and are not credited until received in Lender's office during normal business hours.

11. **Refusal To Lend.** Lender may reduce the Credit Limit and/or refuse to honor any Check or request by me for a Loan during such time as (a) I breach a material obligation under this Agreement, (b) the value of the Real Estate securing this Agreement has declined significantly from its value as initially appraised by or for Lender, (c) Lender reasonably believes that I will be unable to fulfill my repayment obligations under this Agreement due to a material change in my financial condition, (d) Lender is prohibited by government action from imposing the Annual Percentage Rate provided for this Agreement, (e) the priority of Lender's Mortgage is adversely affected by government action to the extent that the value of the Mortgage is less than 120% of the Credit Limit, (f) any maximum Annual Percentage Rate described in this Agreement is reached, (g) Lender has been notified by its regulatory agency that additional Loans constitute an unsafe and unsound practice, (h) the Real Estate is no longer occupied by me, or (i) upon the occurrence of any of the circumstances described in paragraph 12 (a), (b) or (c). Within 3 business days after such reduction or refusal Lender shall mail or deliver written notice of the action to me at the most recent address appearing on Lender's records. If more than one person signs this Agreement, Lender may, at its option and without notice, reduce the Credit Limit and/or refuse to honor any Checks or request by me or us for a Loan following Lender's receipt of request to do so from any one of us or following Lender's receipt of inconsistent instructions from us. Lender may require consistent written instructions from all persons signing this Agreement to reverse Lender's action taken in response to a request from any one of us.

12. **Termination.** Lender may terminate my right to obtain Loans under this Agreement at any time after (a) there has been default or a material misrepresentation by me in connection with this Agreement, (b) I fail to make any payment when due, or (c) any action or inaction by me adversely affects the Mortgage or any right of Lender in the Real Estate described in the Mortgage, including but not limited to, the transfer of title to or sale of the Real Estate by me without the consent of Lender, my failure to maintain required insurance on improvements on the Real Estate, waste or failure to maintain the Real Estate, failure to pay taxes on the Real Estate, my death, the filing of a lien senior to the Mortgage, the taking of the Real Estate or improvements described in the Mortgage through eminent domain, or a foreclosure by a prior lien holder on the Real Estate. I may terminate my right to obtain Loans under this Agreement at any time and for any reason by written notice to Lender by me, and such notice of termination shall be binding on each person other than Lender who has signed this Agreement. Such notice from me is effective when received by Lender. **EARLY TERMINATION FEE:** I agree to pay a fee of $500.00 in the event I terminate my right to obtain Loans under this Agreement at any time prior to 24 months from the date of this Agreement. Unless sooner terminated for any of the reasons described above, this Agreement shall mature and terminate on the date specified in paragraph 1. Termination, for whatever reason, does not affect Lender's rights, powers and privileges, or my duties and liabilities with regard to the then existing balance of the Account.

13. **Acceleration.** I shall not take any action or permit an event to occur which materially impairs the condition, value or protection of Lender's rights in any collateral. Upon the occurrence of any one or more of the following events of default: (a) I fail to pay at least the Minimum Payment when due on two occasions within any 12 month period; or (b) I fail to observe or perform any of the other covenants or duties contained in this Agreement or any agreement securing this Agreement if the failure materially impairs the condition, value or protection of or Lender's rights in any collateral; then, at Lender's option, the full amount unpaid under this Agreement shall become immediately due and payable unless notice to me and an opportunity to cure is required by Section 425.105, Wis. Stats., and in that event, shall become due and payable if I do not cure as provided in that statute. Lender may waive any default without waiving any other prior or subsequent default. To the extent not prohibited by the Wisconsin Consumer Act or Ch. 428, Wis. Stats., if applicable, I shall reimburse Lender for its costs of collection, including reasonable attorneys' fees and legal expenses.

14. **Amendment.** Lender may amend the terms of this Agreement from time to time to make any insignificant change to its terms or to make any change that will unequivocally benefit me through the remainder of this Agreement, and will mail to me not less than 15 days prior to the effective date, or as otherwise required by law, at my last known address shown on the records of Lender, written notice of any such amendment. This Agreement may not otherwise be amended or modified unless the amendment or modification is in writing and signed by Lender and me.

15. **Assignment.** This Agreement runs exclusively to me and neither this Agreement nor any of my rights under it are assignable.

16. **Credit Information.** I agree to furnish or will authorize to be furnished such credit and financial information (including but not limited to current financial statements) as Lender may require from time to time. I authorize Lender to investigate my credit standing prior to Lender's acceptance of this Agreement and at anytime thereafter. I authorize Lender to disclose information to third parties relating to my standing with Lender.

17. **Joint Accounts.** "I," "my," "me" and "us" includes each person other than Lender who signs this Agreement. Any such person may request Loans under this Agreement, all of them are jointly and severally liable for all Loans and other obligations under this Agreement, and each of them may, by their sole signature, create a Loan under this Agreement.

18. **Interpretation.** The validity, construction and enforcement of this Agreement are governed by the internal laws of the State of Wisconsin. No invalidity of any provision of this Agreement shall affect the validity of any other provisions of this Agreement. All terms not otherwise defined have the meanings assigned to them by the Wisconsin Uniform Commercial Code, the Wisconsin Consumer Act and Federal Reserve Board Regulation Z (12 CFR Part 226). This Agreement is intended by Lender and me as a final expression of this Agreement and as a complete and exclusive statement of its terms, there being no conditions to the full effectiveness of this Agreement except as set forth in this Agreement. The Provisions of this Agreement shall control whenever inconsistent with provisions of any agreement securing this Agreement.

19. **Tax Implications.** I should consult a tax adviser regarding the deductibility of interest and charges made under this Agreement.

Credit Agreement

Case 16-20600-gmh    Doc 13    Filed 03/01/16    Page 17 of 30

```
Variable Rate Disclosures
```

**Variable Rate.** This Agreement contains a variable interest rate provision which permits Lender to increase or decrease the rate of interest from time to time. The following disclosures are applicable if this Agreement is secured by a first lien real estate mortgage or equivalent security interest on a one-to-four family dwelling used as my principal residence:

**Index.** An increase or decrease in the Index Rate defined in paragraph 4.b. will cause a corresponding increase or decrease in the Annual Percentage Rate.

**Right To Prepay.** I may prepay this Agreement in whole or in part at any time without penalty.

**Notice.** Notice of any increase in the Annual Percentage Rate must be given to me by Lender.

YOUR BILLING RIGHTS
KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case Of Errors or Questions About Your Bill.** If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
* Your name and account number.
* The dollar amount of the suspected error.
* Describe the error and explain, if you can, why you believe there is an error. If you need more information describe the item you are unsure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop payment on any amount you think is wrong. To stop payment your letter must reach us three business days before automatic payment is scheduled to occur.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.** We must acknowledge you letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we find that we did not make a mistake, you may have to pay finance charges, and you will have to make any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we cannot collect the first $50.00 of the questioned amount, even if your bill was correct.

Credit Agreement

HOME EQUITY CREDIT AGREEMENT, PAGE 3 OF 3

DO#022 NOV 28 '05

3340669

*MC3340669-002*

REGISTER'S OFFICE
WAUKESHA COUNTY, WI
RECORDED ON

11-28-2005  11:25 AM
MICHAEL J. HASSLINGER
REGISTER OF DEEDS

| | |
|---|---|
| REC. FEE: | 6.00 |
| REC. FEE-CO: | 5.00 |
| REC. FEE-ST: | 2.00 |
| TRAN. FEE: | |
| TRAN. FEE-STATE: | |
| PAGES: | 2 |

RETURN TO MORTGAGEE AT.

**WAUWATOSA SAVINGS BANK**
**11200 W PLANK COURT**
**WAUWATOSA, WI 53226**

PARCEL ID NUMBER

NBC 1267-996

Loan Number:

The undersigned Mortgagor(s):

TIMOTHY P SIDDERS, HUSBAND AND JENNIFER S SIDDERS, WIFE

hereby mortgage(s) to WAUWATOSA SAVINGS BANK, a Wisconsin Corporation, Mortgagee, real estate in WAUKESHA County, Wisconsin described as follows (hereinafter the "Property"):

All that part of the Southeast 1/4 of Section 30, Township 6 North, Range 20 East, in the City of New Berlin, Waukesha County, State of Wisconsin, bounded and described as follows, to-wit; Commencing at the Southeast corner of said 1/4 Section, thence North along the East line of said 1/4 Section 647.16 feet to a point; thence West and parallel to the South line of said 1/4 Section 60 feet to a point; thence South and parallel to the East line of said 1/4 Section 647.16 feet to a point; thence East along the South line of said 1/4 Section 60 feet to the place of beginning. EXCEPTING therefrom those portions used for road purposes  Also: All that part of the Southwest 1/4 of Section 29, Township 6 North, Range 20 East, in the City of New Berlin, Waukesha County, Wisconsin, bounded and described as follows, to wit  Commencing at the Southwest corner of said 1/4 Section; thence South 89 degrees 43' East along the South line of said 1/4 Section, 341.20 feet to a point, thence North 645.21 feet to a point; thence North 89 degrees 43' West 341.20 feet to a point in the West line of said 1/4 Section; thence South 647.46 feet along the West line of said 1/4 Section to the place of beginning. Also known as 20390 W Barton Rd, New Berlin, WI  53151-3917. This mortgage is subject to a first mortgage to Wauwatosa Savings Bank dated June 8, 2004.

including all apparatus, equipment, fixtures or articles, whether in single units or centrally controlled, used to supply heat, gas, air conditioning, water, light, power, refrigeration, ventilation, or otherwise, and any other thing now or hereafter therein or thereon, including screens, window shades, storm doors and windows, floor coverings, screen doors, awnings, built-in stoves, and water heaters (all of which are fixtures and a part of said real estate whether physically attached thereto or not), together with the privileges, hereditaments, appurtenances and improvements now or hereafter belonging to or erected thereon, hereby releasing and waiving all rights under any homestead exemption laws and all right to retain possession of said premises after any default in payment or breach of any of the covenants or agreements herein

This mortgage is given to secure an indebtedness to Mortgagee under a home equity credit agreement in the amount of ONE HUNDRED FIVE THOUSAND SIX HUNDRED AND NO/100THS Dollars ($105,600.00) of even date, executed by Mortgagors, which agreement is made a part hereof (hereinafter the "Agreement"), such additional sums subsequently advanced in accordance with and pursuant to the Agreement, and all other indebtedness of Mortgagors to Mortgagee agreed by Mortgagors to be secured hereby.  It is the intent hereof to secure payment by Mortgagors of sums of money payable pursuant to the Agreement, which is a revolving credit agreement, whether the entire amount has been advanced to Mortgagors at the date hereof or is advanced at a later date, or having been advanced, has been repaid in part and further advances made at a later date. Nothing herein contained shall be considered as limiting the amount that shall be secured hereby when advanced to protect the Property, or in accordance with covenants contained in this mortgage and the Agreement.

Mortgagors shall keep the improvements on the Property insured against direct loss or damage occasioned by fire, flood, extended coverage perils, and such other hazards as Mortgagee may require, through insurers approved by Mortgagee, in amounts, without co-insurance, not less than the unpaid balance owed under the Agreement or the full replacement value, which ever is less, and shall pay the premiums when due  The policies shall contain the standard mortgage clause in favor of Mortgagee and, unless Mortgagee otherwise agrees in writing, the original of all policies covering the Property shall be deposited with Mortgagee upon Mortgagee's request  Subject to Mortgagee's approval, Mortgagors are free to select the insurance agent or insurer through which insurance is obtained  Mortgagors shall promptly give notice of loss to insurance companies and Mortgagee.  All proceeds from such insurance shall be applied, at Mortgagee's option, either to the reduction of the unpaid balance owed under the Agreement or to the restoration or repair of the improvements on the Property  In the event of the foreclosure of this Mortgage or other transfer of title to the Property in extinguishment of the indebtedness secured hereby, all right, title and interest of Mortgagors in and to any insurance then in force shall pass to the purchaser or grantee

Mortgagors covenant:  (a) to pay before they become delinquent all taxes, assessments and other charges which may be levied or assessed against the Property, against Mortgagee, upon this Mortgage or the Agreement or other debt secured by this Mortgage, or upon Mortgagee's interest in the Property, and to deliver to Mortgagee receipts showing timely payment; (b) to keep the Property in good and tenantable condition and repair, and to restore or replace damaged or destroyed improvements and fixtures; (c) to keep the Property free from liens and encumbrances; (d) to perform all of Mortgagors' obligations and duties under any other mortgage or security agreement on the Property and to satisfy any obligation to pay secured by such a mortgage or security agreement; (e) not to commit waste or permit waste to be committed upon the

Mortgage

W3041381

Page 1 of 2

Blumberg No. 5119

EXHIBIT
E


Property; (f) not to remove, demolish, or materially alter any part of the Property, without Mortgagee's prior written consent, except that Mortgagors may remove a fixture, provided that any such fixture is immediately replaced with another fixture of at least equal utility; g) to pay Mortgagee all compensation received for the taking of the Property or any part thereof by condemnation proceeding (including payments in compromise of condemnation proceedings), and all compensation received for damages for injury to the Property or any part thereof; the compensation shall be applied, at Mortgagee's option, either to the reduction of the unpaid balance owed under the Agreement or to the restoration or repair of the Property; (h) that Mortgagee and its representatives may enter the Property at reasonable times to inspect it, and, at Mortgagee's option, to repair or restore the Property and make environmental assessments and audits of the Property; (i) to comply with all laws, ordinances and regulations affecting the Property; and (j) that Mortgagee is subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the proceeds of the Agreement.

If the Mortgagors fail to perform any of Mortgagors' duties set forth in this Mortgage, Mortgagee may after giving any notice and opportunity to perform required by law, perform or cause to be performed the duties, including without limitation signing Mortgagors' name or paying any amount required to be paid, and the cost shall be due on demand and secured by this Mortgage, bearing interest at the highest rate stated in the Agreement, but not in excess of the maximum rate permitted by law, from the date of expenditure by Mortgagee to the date of payment by Mortgagors.

Mortgagors hereby assign to Mortgagee as additional cash collateral security all rents and profits derived from the Property Mortgagors hereby appoint said Mortgagee agent for the management of the Property, and Mortgagee shall at any time and without notice have the right to enter upon, take possession of and manage the Property, including the right to hire and pay a property manager, and to collect the rents of the property, including those past due, directly from the occupants and past occupants of the Property, and bring or defend any actions in connection with the Property, which appointment and rights Mortgagee may elect to accept and exercise in the event Mortgagee, in its sole discretion, determines there has been a default or breach of covenant by Mortgagors. Mortgagee may elect from time to time not to enforce some or all of the provisions of this paragraph. Mortgagee may provide a copy hereof to the occupants and past occupants of the Property, and such copy shall be sufficient notice and evidence of Mortgagee's right to collect rents directly from said occupants Mortgagors consent to the appointment of a receiver by a court, without notice and without bond, to take possession of the Property, with authority and power to rent and lease the Property; to manage and maintain the Property, including hiring a property manager, to collect all rents and profits; to terminate tenancies and evict occupants, or tenants in default; and to pay expenses incurred for maintenance, utilities, taxes, and insurance; and with such other power and authority as granted by the Agreement and the court

Mortgagors agree that in the event of foreclosure, Mortgagee may, at such time, waive judgment for any deficiency and proceed pursuant to the provisions of Sections 846.101 and 846.103(2) of the Wisconsin Statutes, as they may apply to the property.

In the event that the Property or any part thereof is sold, conveyed, transferred, encumbered, or leased for a term of more than one year, or in the event that either legal or equitable title vests in any persons other than the Mortgagors for any reason, then without notice to Mortgagors, the entire indebtedness pursuant to this mortgage and the Agreement shall become due and payable forthwith, at the option of Mortgagee, and without further notice Mortgagee may deal with any transferee as to his interest in the same manner as with Mortgagors, without in any way discharging the liability of Mortgagors under this Mortgage or the Agreement.

The invalidity or unenforceability of any provision of this Mortgage shall not affect the validity or enforceability of any other provision.

The obligations of Mortgagors are joint and several  This Mortgage benefits Mortgagee, its successors and assigns, and binds Mortgagors and their respective heirs, personal representatives, successors and assigns

This Mortgage is intended by Mortgagors and Mortgagee as a final expression of this Mortgage and as a complete and exclusive statement of its terms, there being no conditions to the full effectiveness of this Mortgage.

If one person executes this mortgage, the term "Mortgagors" and the use of the plural number herein shall be read and construed accordingly.

IN WITNESS WHEREOF, the said Mortgagor(s) have executed and sealed this instrument at WAUWATOSA, Wisconsin, on NOVEMBER 14, 2005.

_____ (SEAL)
TIMOTHY P SIDDERS, HUSBAND

_____ (SEAL)
JENNIFER S SIDDERS, WIFE

STATE OF WISCONSIN
MILWAUKEE County

Personally came before me on NOVEMBER 14, 2005 the above named:

TIMOTHY P SIDDERS, HUSBAND AND JENNIFER S SIDDERS, WIFE

to me known to be the person(s) who executed the foregoing instrument and acknowledged the same.

This instrument was drafted by:

W.F. Bruss for                           (Seal)
Wauwatosa Savings Bank

19-004140-0

Angeline A. Frindell
ANGELINE A FRINDELL
Notary Public, State Of Wisconsin
My Commission Expires: November 4, 2007

Mortgage                          Page 2 of 2

## LOAN EXTENSION AGREEMENT

THIS AGREEMENT, made this 21st day of January, 2008, between Premier Investment Properties LLC, hereinafter called mortgagor(s), and WAUWATOSA SAVINGS BANK, hereinafter called mortgagee.

FOR AND IN MUTUAL CONSIDERATION, the terms and conditions of a certain mortgage note and mortgage dated the 8th day of June, 2004, given by the mortgagor(s) to the mortgagee, and which note is secured by a mortgage given by the mortgagor(s) to the mortgagee, dated the 8th day of June, 2004, and recorded in the office of the Register of Deeds for Waukesha County, Wisconsin, on the 22nd day of June, 2004, at 8 02 o'clock A.M., in Reel N/A of Mortgages on Image N/A, as Document No 3177215, for property(ies) located at 20390 W Bartone Rd is hereby extended as follows:

Payment of $275,653.33, being the balance due and payable as of March 1, 2008, is hereby extended by WAUWATOSA SAVINGS BANK upon the following terms and conditions:

Provided mortgagor(s) comply with all their obligations under said mortgage note and mortgage, except as herein modified and hereunder the entire balance shall be fully due and payable on March 1, 2011. Interest shall be at the rate of 5.50% per annum from March 1, 2008. The current principal balance is amortized over 316 months.

If more than one mortgagor has executed this Agreement, all mortgagors agree to the modification terms and conditions as set forth above and as stated in the mortgage note and mortgage. Mortgagor(s) shall make the following monthly payments on the 1st day of each and every month until maturity:

| | |
|---|---|
| Principal and Interest: | $1,652.87 |
| Tax and Insurance Escrow: | $4,096.96 |
| Total Payment: | $2,062.83 |

The above monthly payment is subject to increases or decreases in real estate taxes and insurance premiums.

**Premier Investment Properties LLC**
Corporate Name of Borrower

_____
Timothy P Sidders                          Member

_____

In the presence of:

_____        By _____
Thomas Provost                                      Todd Cruciani              Vice President

APPROVED AT BOARD OF
DIRECTORS MEETING
FEB 2 9 2008

State of Wisconsin    )
                                 ) SS
County of Milwaukee )

Personally came before me this   2 9   day of FEBRUARY 2008                        , the above named,
Todd Cruciani, Vice-President, of the above named Corporation, to me known to be such Vice-President of the above named Corporation, and acknowledge that they executed the foregoing instrument as such officers as the deed of said Corporation, by its authority.

My commission expires: May   18, 2008

_____
Teressa J. Rowley
Notary Public, State of Wisconsin

EXHIBIT
F
Blumberg No. 5119

## LOAN EXTENSION AGREEMENT

THIS LOAN EXTENSION AGREEMENT is made this 17th day of February, 2011, between Premier Investment Properties LLC ("Borrower, whether one or more") and WaterStone Bank SSB f/k/a Wauwatosa Savings Bank ("WaterStone").

### Recitals

1.      WaterStone lent the sum of $290,400.00 to Borrower evidenced by a **Mortgage** note no.8746001-89245 executed by Borrower to WaterStone dated June 8, 2004 (the "Note"), and secured by a mortgage from Borrower to WaterStone dated June 8, 2004 (the, "Mortgage")

### Agreement

WITNESSETH, in consideration of the mutual promises of the parties hereto, the Note and Mortgage are amended, modified, and restated as follows:

1.      Contemporaneous with the execution of this Agreement, the maturity date of the Note shall be extended from March 1, 2011 to March 1, 2014 (the, "Maturity Date") for a fee of $250.00.

2.      Commencing March 1, 2011, the rate of interest charged on the outstanding principal loan balance shall be 5.50%.

3.      Commencing March 1, 2011 and continuing on the first day of each and every month through February 1, 2014, the monthly installment payment required pursuant to the Note and Mortgage shall be $2,088.74 and consist of principal, interest, and real estate tax escrow. The monthly payment may increase or decrease due to an escrow reanalysis and a corresponding increase or decrease in required tax escrow payments. One final balloon payment shall be due on the Maturity Date in an amount equal to the then unpaid principal and accrued and unpaid interest.

4.      Except as expressly amended and modified herein, all terms, conditions, and provisions of the Note and Mortgage remain unchanged and of full force and effect.

Dated this 28 day of Feb , 2011

WaterStone Bank, SSB

BY: _____
Todd Cruciani, Vice President

Premier Investment Properties LLC
Corporate Name of Borrower

BY: _____
Timothy Sidders, Member

1

EXHIBIT
G
Blumberg No. 5119

## MODIFICATION AGREEMENT

THIS MODIFICATION AGREEMENT is made this ___30th___ day of April 2012 between Timothy P. Sidders and Jennifer S. Sidders ("Borrower A"), Premier Investment Properties, LLC and Timothy P. Sidders ("Borrower B") and WaterStone Bank SSB f/k/a Wauwatosa Savings Bank (hereinafter "WaterStone").

### Recitals

1.      WaterStone lent the sum of $392,000.00 to Borrower A evidenced by a mortgage note from Borrower A to WaterStone dated February 8, 2007 ("Note A"), and secured by a mortgage from Borrower A to WaterStone dated February 8, 2007, and recorded in the Office of the Register of Deeds for Milwaukee County, Wisconsin on April 4, 2007 as Document No. 09411300 ("Mortgage A").

2.      WaterStone lent the sum of $668,800.00 to Borrower A evidenced by a commercial promissory note from Borrower A to WaterStone dated August 8, 2007 ("Note B"), and secured by a mortgage from Borrower A to WaterStone dated August 8, 2007 and recorded in the Office of the Register of Deeds for Milwaukee County, Wisconsin on August 23, 2007 as Document No. 9483207. ("Mortgage B").

3.      WaterStone lent the sum of $46,400.00 to Borrower A evidenced by a mortgage note from Borrower A to WaterStone dated December 13, 2001 ("Note C"), and secured by a mortgage from Borrower A to WaterStone dated December 13, 2001, and recorded in the Office of the Register of Deeds for Milwaukee County, Wisconsin on January 25, 2002 as Document No. 8211316 ("Mortgage C").

4.      WaterStone lent the sum of $290,400.00 to Borrower B evidenced by a mortgage note ("Note D") from Borrower B to WaterStone dated June 08, 2004 and secured by a mortgage from Premier Investment Properties, LLC to WaterStone dated June 08, 2004, and recorded in the Office of the Register of Deeds for Waukesha County, Wisconsin on June 22, 2004 as Document 3177215 ("Mortgage D").

5.      WaterStone lent the sum of $105,600.00 to Borrower A evidenced by a home equity credit agreement ("Note E") from Borrower A to WaterStone dated November 14, 2005 and secured by a mortgage from Borrower A to WaterStone dated November 14, 2005 and recorded in the Office of the Register of Deeds for Waukesha County, Wisconsin on November 28, 2005 as Document 3340669 ("Mortgage E").

6.      Each of the loans identified above in paragraphs 1-5 shall hereinafter be referred to collectively as the "Sidders Loans".

7.      Each of the mortgages identified above in paragraphs 1-5 shall hereinafter be referred to collectively as the "Mortgages".

1



8.      Each of the mortgage notes identified above in paragraphs 1-5 shall hereinafter be referred to collectively as the "Notes".

9.      In addition to the Mortgages, the Sidders Loans are also secured by a mortgage dated March 31, 2009 (the "Cross Collateral Mortgage") from Borrower A, Borrower B, and entities to which Borrower A and Borrower B quit-claimed their interest in the property subsequent to the origination of the Sidders Loans.

10.     The cumulative balance due and owing pursuant to the Sidders Loans is $1,388,039.24 and such amount is due and owing without offsets, deductions, counterclaims, or defenses of any kind or character whatsoever.

11.     Borrower A, Borrower B, and entities in which Borrower A and/or Borrower B are affiliated and/or have a membership interest are the current owners of the real property that are the subject of the Mortgages and Cross Collateral Mortgage; the Mortgages and Cross Collateral Mortgage are a valid lien against said real property, neither Borrower A, Borrower B, or the entities in which Borrower A and Borrower B are affiliated and/or have a membership interest do not have any offsets, deductions, counterclaims, or defenses of any kind or character whatsoever with respect to the Mortgages, Cross Collateral Mortgage, or Note.

<u>Agreement</u>

        WITNESSETH, in consideration of the mutual promises of the parties hereto, the Sidders Loans are modified as follows:

1.      Commencing as of April 1, 2012 and on the first day of each month thereafter through September 1, 2012, the monthly payment required pursuant to the Sidders Loans shall be $11,377.00 consisting of interest, real estate tax escrow, and arrearages associated with the Sidders Loans.

2.      In the event either Borrower A or Borrower B fails to comply with the terms and provisions of Sidders Loans or this Modification Agreement, the monthly installment payments required pursuant to the Sidders Loans shall be calculated in accordance with each respective Note and this Modification Agreement shall be of no force or effect.

3. Except as expressly amended and modified herein, all terms, conditions, and provisions of the Sidders Loans remain unchanged and of full force and effect.

2

Dated this __4/30__ day of April 2012

**WaterStone Bank, SSB**

BY: _____
Todd Cruciani, Vice President

_____
Timothy P. Sidders

_____
Jennifer S. Sidders

**Premier Investment Properties, LLC**

BY: _____
Timothy P. Sidders, Member

3

STATE OF WISCONSIN       CIRCUIT COURT       WAUKESHA COUNTY
CIVIL DIVISION

---

WATERSTONE BANK SSB f/k/a
WAUWATOSA SAVINGS BANK,

                  Plaintiff,         **ORDER FOR JUDGMENT**

vs.                      **FILED**    **AND JUDGMENT**
                    IN CIRCUIT COURT

                    MAR 1 3 2013    Case No. 13-CV-00222

TIMOTHY P. SIDDERS, et al.,    WAUKESHA CO. WI
                    CIVIL DIVISION
           Defendants.

---

        COURT:            Circuit Court, Branch 5
        PLACE:            Waukesha County Courthouse
        PRESIDING JUDGE:  The Honorable Lee S. Dreyfus, Jr.

        APPEARANCES:

        FOR PLAINTIFF:     By: Mark C. Vap (via affidavit – under 5 day rule)

        FOR DEFENDANTS:

        This matter having come on for hearing as noted above, and the Lis Pendens of this action having duly been filed in the proper county after filing of the Summons and Complaint, and more than 20 days prior to hearing, and the Court, upon the records, files, pleadings, testimony and proof being sufficiently advised herein:

IT IS ADJUDGED:

        1.    The material allegations of the Complaint are determined to be true.

        2.    WaterStone Bank SSB f/k/a Wauwatosa Savings Bank is a domestic corporation engaged in the savings bank business with offices at 11200 West Plank Court in the City of Wauwatosa, County of Milwaukee, State of Wisconsin.

        3.    The names, residences and occupations, trades or professions of the Mortgagor Defendants as accurately as can be ascertained are:

| NAME | ADDRESS | BUSINESS |
|---|---|---|
| Premier Investment Properties LLC | 20390 West Barton Road New Berlin, WI 53146 | Unknown |
| Timothy P. Sidders Jennifer S. Sidders | 20390 West Barton Road New Berlin, WI 53146 | Unknown |

1



4.   The Mortgagor Defendants, co-signors and guarantors failed to comply with the terms and conditions of the mortgage note and mortgage, and accordingly there is now justly due and owing plaintiff from the Mortgagor Defendants the following amounts:

| | | |
|---|---|---|
| Principal: | $252,741.45 | |
| Interest: | 2,246.98 | |
| Late Charges: | 3,540.93 | |
| Return Check Charges: | 20.00 | |
| Foreclosure Appraisal Report: | 100.00 | |
| Escrow Advanced: | 97.69 | |
| | | |
| Subtotal A: | | $258,747.05 |
| | | |
| Principal: | $104,766.05 | |
| Interest: | 1,291.62 | |
| Late Charges: | 82.13 | |
| | | |
| Subtotal B: | | $106,139.80 |
| | | |
| Costs and Disbursements: | | $841.80 |
| Reasonable Attorneys Fees: | | $735.00 |
| | | |
| GRAND TOTAL: | | $366,463.65 |

plus interest at the rate of 5.50% per annum from March 1, 2013 (Mortgage Note and Mortgage "A"); plus interest at the rate of 5.00% per annum from March 1, 2013 (Home Equity Credit Agreement and Mortgage "B"); and all additional amounts paid or incurred by the plaintiff or the Receiver, including, but not limited to, taxes (including current year's accruals), insurance, title expense, appraisals, maintenance and repairs, preservation of the property, and attorneys' fees in this and any other proceeding including bankruptcy, which are not included in the Judgment may be added to the Judgment by Order at any time after entry thereof together with interest at the rate provided in this paragraph 4, or may be added to the amount due plaintiff upon redemption or at Confirmation of Sale, with such added amounts to be paid out of the proceeds of the sale or redemption of the mortgaged property.

5.   The Mortgagor Defendants have failed to pay monthly escrow installments for payment of taxes and insurance, the sum of which, together with interest due on all unpaid taxes due to any governmental taxing unit to date of confirmation shall be determined to be due the plaintiff.

6.   The mortgage of the plaintiff has priority over all mortgages, liens, claims, judgments and encumbrances of whatever sort of any of the defendants, and of any other occupant of said property whose occupancy is not of record.

7.   **The provisions of § 846.101 of the Wisconsin Statutes apply to the property subject to this action unless the property is abandoned, and then plaintiff intends to proceed under § 846.102 of the Wisconsin Statutes. Pursuant to § 846.101 of the Wisconsin Statues, the plaintiff has waived judgment for any deficiency and the period of redemption shall be six (6) months.**

2

8. The mortgaged property described below shall, unless sooner redeemed as provided by law, be sold at public auction in this County by and under the direction of the Sheriff at any time after six (6) months from the date of Judgment in the manner provided by law, unless otherwise agreed upon by the parties, and said Sheriff shall give public notice of the time and place of such sale in the manner provided by law and by publication in a newspaper in Waukesha County, Wisconsin.

Legal Descriptions:

All that part of the Southeast One-quarter (1/4) of Section Thirty (30), in Township Six (6) North, Range Twenty (20) East, in the City of New Berlin, Waukesha County, Wisconsin, bounded and described as follows, to-wit: Commencing at the Southeast corner of said 1/4 Section; thence North along the East line of said 1/4 Section 647.16 feet to a point; thence West and parallel to the South line of said 1/4 Section 60 feet to a point; thence South and parallel to the East line of said 1/4 Section, 647.16 feet to a point; thence East along the South line of said 1/4 Section 60 feet to the place of beginning. Excepting therefrom those portions used for road purposes.

Also, all that part of the Southwest One-quarter (1/4) of Section Twenty-nine (29), in Township Six (6) North, Range Twenty (20) East, in the City of New Berlin, Waukesha County, Wisconsin, bounded and described as follows, to-wit: Commencing at the Southwest corner of said 1/4 Section; thence South 89°43' East along the South line of said 1/4 Section 341.20 feet to a point; thence North 645.21 feet to a point; thence North 89°43' West 341.20 feet to a point in the West line of said 1/4 Section; thence South 647.46 feet along the West line of said 1/4 Section to the place of beginning. Excepting therefrom those portions used for road purposes.

P.O. Address: 20390 West Barton Road, New Berlin, WI 53146

9. The mortgaged property shall be sold free and clear of all claims, rights or equity of redemption thereof of all parties to this action, their heirs, successors and assigns and all persons claiming under them subsequent to the filing of the Lis Pendens of this action, and defendants shall be forever barred and foreclosed of any right, title or interest in and to said property.

10. After deducting Sheriff's fees and expenses of sale, and receiver's fees and expenses, if any, the proceeds of sale shall first be applied to the amounts due plaintiff, as herein provided, together with interest, and the surplus, if any, shall be subject to further order of this Court.

11. After the Sheriff's Sale, the Sheriff shall make due report thereof to the Court as provided by law; the purchaser shall be let into possession of said property on production of the Sheriff's Deed, or a duly certified copy thereof, and all parties to this action or other persons securing possession after the filing of the Lis Pendens shall deliver possession to said purchaser.

12. The defendants and all persons claiming under them are enjoined from committing waste upon the mortgaged property prior to redemption or confirmation of sale.

3

It is ordered that this Judgment shall be entered by the Clerk of this Court.

Dated at Waukesha, Wisconsin on March 12, 2013.

BY THE COURT:

## /S/ LEE S. DREYFUS

Circuit Judge

**THIS ORDER IS FINAL FOR PURPOSES OF APPEAL**

Judgment entered on March 13, 2013. Time 1:39 p.m.

THE CLERK OF CIRCUIT COURT
Kathleen A. Madden

By: S/ Kathleen A. Madden
Judgment Clerk

**CASE NO. 13-CV-00222**

4

The following disbursements have been or will be necessarily made or incurred and the papers and copies charged for in said account were actually and necessarily obtained for use in said action:

## DISBURSEMENTS

| | |
|---|---|
| Filing Fee - Summons and Complaint: | $265.50 |
| Recording Fee - Lis Pendens: | 34.00 |
| Title Expense: | 350.00 |
| Service Fees: | 168.00 |
| Photocoples: | 24.30 |
| TOTAL: | $841.80 |

Mark C. Yap
State Bar No. 1046026
Attorney For Plaintiff

Subscribed and sworn to before me
this 27th day of February, 2013.



Notary Public, State of Wisconsin
My Commission Expires: 1-22-2017

5